## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| WILLIAM E. HATTAWAY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APYX MEDICAL CORPORATION, CHARLES D. GOODWIN II, and TARA SEMB,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William E. Hattaway ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Apyx Medical Corporation ("Apyx" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Apyx; and (c) review of other publicly available information concerning Apyx.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Apyx securities between May 12, 2021 and March 11, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Apyx claims to be an advanced energy technology company with products in the cosmetic and surgical markets. Nearly 80% of its revenue is derived from the Advanced Energy segment, which consists of the Company's helium plasma technology that is marketed and sold as Renuvion (in the cosmetic surgery market) and J-Plasma (in the hospital surgical market).

3. On March 14, 2022, Apyx disclosed that the U.S. Food and Drug Administration ("FDA") would be posting a Medical Device Safety Communication ("MDSC") related to the Company's Advanced Energy Products. The Company further disclosed that "[b]ased on our initial interactions with the FDA, we believe the Agency's MDSC will pertain to the use of our Advanced Energy products outside of their FDA-cleared indication for general use in cutting, coagulation, and ablation of soft tissue during open and laparoscopic surgical procedures."

4.     On this news, the Company's stock fell $4.02, or 40.6%, to close at $5.88 per share on March 14, 2022, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that a significant number of Apyx's Advanced Energy products were used for off-label indications; (2) that such off-label uses led to an increase in the number of medical device reports filed by Apyx reporting serious adverse events; (3) that, as a result, the Company was reasonably likely to incur regulatory scrutiny; (4) that, as a result of the foregoing, the Company's financial results would be adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein,

including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are in this District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

11.     Plaintiff William E. Hattaway, as set forth in the accompanying certification, incorporated by reference herein, purchased Apyx securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Apyx is incorporated under the laws of Delaware with its principal executive offices located in Clearwater, Florida. Apyx's common stock trades on the NASDAQ exchange under the symbol "APYX."

13.     Defendant Charles D. Goodwin II ("Goodwin") was Apyx's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Tara Semb ("Semb") was Apyx's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Goodwin and Semb (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein

to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Apyx claims to be an advanced energy technology company with products in the cosmetic and surgical markets. Nearly 80% of its revenue is derived from the Advanced Energy segment, which consists of the Company's helium plasma technology that is marketed and sold as Renuvion (in the cosmetic surgery market) and J-Plasma (in the hospital surgical market).

### Materially False and Misleading Statements Issued During the Class Period

17.     The Class Period begins on May 12, 2021. On that day, Apyx announced its first quarter 2021 financial results in a press release that stated, in relevant part:[1]

**First Quarter 2021 Financial Summary:**

- Total revenue of $8.6 million, up 72.9% year-over-year.

    o   Advanced Energy revenue of $7.7 million, up 92.2% year-over-year.

    o   OEM revenue of $1.0 million, down 3.3% year-over-year.

- Net loss of $4.9 million, compared to net loss of $2.0 million for the first quarter of 2020. Net loss in the first quarter of 2020 included an income tax benefit of $4.9 million.

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

18.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended March 31, 2021, affirming the previously reported financial results. It also incorporated by reference the risk factors stated in Apyx's fiscal 2020 annual report (the "2020 10-K"). In relevant part, the 2020 10-K stated:

> ***We are subject to costly and complex laws and governmental regulations and any adverse regulatory action may materially adversely affect our financial condition and business operations.***
>
> *             *             *
>
> If the FDA were to conclude that we are not in compliance with applicable laws or regulations, or that any of our medical products are ineffective or pose an unreasonable health risk, they could ban such medical products, seize adulterated or misbranded medical products, order a recall, repair, replacement, correction, or refund of such products, refuse to grant pending pre-market approval applications, refuse to issue export certificates for foreign governments, or require us to notify health professionals and others that the devices present unreasonable risks of substantial harm to the public health.
>
> In addition, the FDA has taken the position that device manufacturers are prohibited from promoting their products other than for the uses and indications set forth in the cleared product labeling. Any failure to comply could subject us to significant civil or criminal exposure, administrative obligations and costs, other potential penalties from, and/or agreements with, the federal government. Governmental regulations worldwide have, and may continue to become, increasingly stringent and customary.

19.     On August 12, 2021, Apyx announced its second quarter 2021 financial results in a press release that stated, in relevant part:

> **Second Quarter 2021 Financial Summary:**
>
> - Total revenue of $11.2 million, up 161% year-over-year.
>
>   - Advanced Energy revenue of $10.0 million, up 248% year-over-year.
>
>   - OEM revenue of $1.2 million, down 13% year-over-year.
>
> - Net loss attributable to stockholders of $4.0 million, compared to net loss of $4.7 million for the second quarter of 2020. Net loss in the second quarter of 2020 included an income tax benefit of $1.5 million.

- Adjusted EBITDA loss of $2.4 million, compared to adjusted EBITDA loss of $4.9 million for the second quarter of 2020.

20.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2021, affirming the previously reported financial results. It also incorporated by reference the risk factors stated in Apyx's 2020 10-K, including the one previously identified herein.

21.     On November 11, 2021, Apyx announced its third quarter 2021 financial results in a press release that stated, in relevant part:

**Third Quarter 2021 Financial Summary:**

- Total revenue of $11.8 million, up 70% year-over-year.

  - Advanced Energy revenue of $10.3 million, up 88% year-over-year.

  - OEM revenue of $1.5 million, up 3% year-over-year.

- Net loss attributable to stockholders of $4.2 million, compared to net loss attributable to stockholders of $3.7 million for the third quarter of 2020. Net loss attributable to stockholders in the third quarter of 2020 included an income tax benefit of $0.7 million.

- Adjusted EBITDA loss of $2.7 million, compared to adjusted EBITDA loss of $3.1 million for the third quarter of 2020.

*        *        *

**Full Year 2021 Financial Outlook:**

The Company is updating financial guidance for the year ending December 31, 2021 to:

- Total revenue in the range of $44.0 million to $45.0 million, representing growth of 59% to 62% year-over-year, compared to total revenue of $27.7 million for the year ended December 31, 2020. The Company's prior guidance range for total revenue was $40.6 million to $42.6 million, representing growth of 46% to 54% year-over-year.

  - Total revenue guidance assumes:

    - Advanced Energy revenue in the range of approximately $39.0 million to $40.0 million, representing growth of 76%

6

to 80% year-over-year, compared to Advanced Energy revenue of $22.2 million for the year ended December 31, 2020. The Company's prior guidance range for Advanced Energy revenue was $36.0 million to $38.0 million, representing growth of 62% to 71% year-over-year.

- The Advanced Energy revenue range assumes that U.S. growth is only driven by contributions from Renuvion® sales related to its use as a sub-dermal coagulator following liposuction procedures and that international growth is driven primarily by demand in existing international markets.

22.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2021, affirming the previously reported financial results. It also incorporated by reference the risk factors stated in Apyx's 2020 10-K, including the one previously identified herein.

23.     On January 10, 2022, Apyx announced its preliminary fourth quarter and full year 2021 financial results in a press release that stated, in relevant part:

**Preliminary Fourth Quarter 2021 Revenue Summary:**

- Total revenue in a range of $16.3 to $16.8 million, representing growth of 42% to 46% year-over-year.

  o Advanced Energy revenue in a range of $14.7 to $15.0 million, representing growth of 49% to 52% year-over-year

  o OEM revenue in a range of $1.5 to $1.7 million, representing a decline of 2% year-over-year to growth of 10% year-over-year

**Preliminary Full Year 2021 Revenue Summary:**

- Total revenue in a range of $48.0 to $48.5 million, representing growth of 73% to 75% year-over-year.

  o Advanced Energy revenue in a range of $42.7 to $43.0 million, representing growth of approximately 92% 93% year-over-year.

  o OEM revenue in a range of $5.3 to $5.5 million, representing a decline of 4% to 0% year-over-year.

24.     The above statements identified in ¶¶ 17-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose to investors: (1) that a significant number of Apyx's Advanced Energy products were used for off-label indications; (2) that such off-label uses led to an increase in the number of medical device reports filed by Apyx reporting serious adverse events; (3) that, as a result, the Company was reasonably likely to incur regulatory scrutiny; (4) that, as a result of the foregoing, the Company's financial results would be adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**<u>Disclosures at the End of the Class Period</u>**

25.     On March 14, 2022, Apyx disclosed that the FDA would be posting a Medical Device Safety Communication ("MDSC") related to the Company's Advanced Energy Products. The Company further disclosed that "[b]ased on our initial interactions with the FDA, we believe the Agency's MDSC will pertain to the use of our Advanced Energy products outside of their FDA-cleared indication for general use in cutting, coagulation, and ablation of soft tissue during open and laparoscopic surgical procedures." In the press release, Defendant Goodwin conceded that the Company is "aware that some of [its] products are being used by physicians for dermal resurfacing procedures, for which [its] products do not have a cleared indication . . . ."

26.     On this news, the Company's stock fell $4.02, or 40.6%, to close at $5.88 per share on March 14, 2022, on unusually heavy trading volume.

**<u>Post-Class Period Events</u>**

27.     On March 17, 2022, Apyx held a conference call in connection with its fourth quarter and full year 2021 financial results. During the call, Defendant Goodwin posited that the

MDSC was "due in part to the increase in absolute number of MDRs [i.e., medical device reports] reported for our Advanced Energy products in 2021 compared to 2020." Moreover, "14 of these 32 MDRs [in 2021] were performed by physicians that had not yet been trained by [Apyx's] global clinical team of skilled nursing staff."

28.     On May 12, 2022, Apyx held a conference call in connection with its first quarter 2022 financial results. During the call, Defendant Goodwin stated that, following a meeting with FDA's post-market team, Apyx "received feedback from the FDA with requested revisions, including changes to certain messaging on our website, labeling, and training materials."

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Apyx securities between May 12, 2021 and March 11, 2022, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Apyx's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Apyx shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Apyx or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

        (b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Apyx; and

        (c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

35.     The market for Apyx's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Apyx's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Apyx's securities relying upon the integrity of the market price of the Company's securities and market information relating to Apyx, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Apyx's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Apyx's business, operations, and prospects as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Apyx's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.    During the Class Period, Plaintiff and the Class purchased Apyx's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Apyx, their control over, and/or receipt and/or modification of Apyx's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Apyx, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

41.    The market for Apyx's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Apyx's securities traded at artificially inflated prices during the Class Period.  On

12

November 22, 2021, the Company's share price closed at a Class Period high of $17.40 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Apyx's securities and market information relating to Apyx, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Apyx's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Apyx's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Apyx and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Apyx's securities was an efficient market for the following reasons, among others:

(a)     Apyx shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Apyx filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Apyx regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the

national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Apyx was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Apyx's securities promptly digested current information regarding Apyx from all publicly available sources and reflected such information in Apyx's share price. Under these circumstances, all purchasers of Apyx's securities during the Class Period suffered similar injury through their purchase of Apyx's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Apyx who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Apyx's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Apyx's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Apyx's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Apyx's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Apyx and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the

creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Apyx's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Apyx's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in

which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Apyx's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Apyx was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Apyx securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     Individual Defendants acted as controlling persons of Apyx within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's

operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.    As set forth above, Apyx and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members

against all defendants, jointly and severally, for all damages sustained as a result of Defendants'

wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  June 6, 2022                    By: */s/ Leo W. Desmond*
                                        Leo W. Desmond, Esquire
                                        Florida Bar Number 0041920
                                        **DESMOND LAW FIRM, P.C.**
                                        5070 Highway A1A, Suite D
                                        Vero Beach, Florida 32963
                                        Telephone: 772.231.9600
                                         lwd@desmondlawfirm.com

                                        **GLANCY PRONGAY & MURRAY LLP**
                                        Casey E. Sadler
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, CA 90067
                                        Telephone: (310) 201-9150
                                        Facsimile: (310) 201-9160

                                        **THE LAW OFFICES OF FRANK R. CRUZ**
                                        Frank R. Cruz
                                        1999 Avenue of the Stars, Suite 1100
                                        Los Angeles, CA 90067
                                        Telephone: (310) 914-5007

                                        *Attorneys for Plaintiff William E. Hattaway*