# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

WILLIAM E. HATTAWAY, Individually
and on Behalf of All Others Similarly
Situated,

      Plaintiffs,

          v.

APYX MEDICAL CORPORATION,
CHARLES D. GOODWIN II, and TARA
SEMB,

      Defendants.

Case No. 8:22-cv-01298-WFJ

**DISPOSITIVE MOTION**

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

TABLE OF ABBREVIATIONS.............................................................iv

ARGUMENT—THE AC FAILS TO PLEAD AN EXCHANGE ACT CLAIM ............................................................................................1

    A.    The AC's Puzzle Pleading Approach Fails to Comply With the PSLRA ................................................................1

    B.    The AC Fails to Allege an Actionable Misstatement or Omission.............................................................................2

        1.    The AC Pleads No False Statement About Financial Performance..................................................2

        2.    The Challenged Regulatory Oversight Risk Factor Was Not False............................................................3

        3.    There Was No Omission That Rendered Any Statement False ................................................................4

        4.    The CW Purported Statements Fail to Plead Falsity..................6

        5.    Many Challenged Statements Are Immaterial Puffery................7

    C.    The AC Pleads No Particularized Facts for a "Strong Inference" of Scienter .........................................................8

    D.    The AC Fails to Plead Loss Causation................................................10

    E.    The AC Fails to Plead a Section 20(a) Claim ......................................10

CONCLUSION ....................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross*,
284 F.3d 72 (1st Cir. 2002)...............................................................................3

*Bhatt v. Tech Data*,
2018 WL 6504375 (M.D. Fla. Dec. 11, 2018)............................................ 5, 10

*Borochoff v. GlaxoSmithKline*,
2008 WL 2073421 (S.D.N.Y. May 9, 2008),
*aff'd*, 343 F. App'x 671 (2d Cir. 2009)..............................................................9

*In re Carnival Corp. Sec. Litig.*,
2021 WL 2583113 (S.D. Fla. May 28, 2021) ...................................................9

*City of Edinburgh Council v. Pfizer*,
754 F.3d 159 (3d Cir. 2014) ..........................................................................10

*Cozzarelli v. Inspire Pharms.*,
549 F.3d 618 (4th Cir. 2008) .........................................................................10

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011)........................................................................2

*In re First Merchants Acceptance Corp. Sec. Litig.*,
1998 WL 781118 (N.D. Ill. Nov. 4, 1998) .......................................................3

*In re Flowers Foods Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. Mar. 23, 2018)............................................. 3, 6

*Gillis v. QRX Pharma*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)............................................................10

*Hallback v. Carrington Mortg. Servs.*,
2022 WL 685663 (M.D. Fla. Mar. 8, 2022)......................................................2

*In re HD Supply Holdings Sec. Litig.*,
341 F. Supp. 3d 1342 (N.D. Ga. 2018)........................................................ 3, 6

*Huls v. Llabona*,
437 F. App'x 830 (11th Cir. 2011)....................................................................3

ii

*Jones v. Bank of Am.*,
  564 F. App'x 432 (11th Cir. 2014)..................................................................5

*Karinski v. Stamps.com*,
  2020 WL 281716 (C.D. Cal. Jan. 17, 2020)...................................................2

*Keippel v. Health Ins. Innovations*,
  2019 WL 5698329 (M.D. Fla. Nov. 4, 2019)..................................................7

*In re KLX Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017)............................................................9

*Lloyd v. CVB Fin.*,
  2016 WL 384773 (9th Cir. Feb. 1, 2016) ........................................................7

*Luczak v. National Beverage*,
  812 F. App'x 915 (11th Cir. 2020)...................................................................7

*Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials*,
  2019 WL 1429667 (M.D. Fla. Mar. 29, 2019) ...........................................5, 7

*Nguyen v. Endologix*,
  962 F.3d 405 (9th Cir. 2020) ........................................................................10

*Plymouth County Ret. Sys. v. Carter's*,
  2011 WL 13124501 (N.D. Ga. Mar. 17, 2011) ...............................................9

*Rice v. Intercept Pharms.*,
  2022 WL 837114 (S.D.N.Y. Mar. 21, 2022)...................................................9

*Rosenberg v. Gould*,
  554 F.3d 962 (11th Cir. 2009) ......................................................................10

*SEC v. Kingdom Legacy Gen. Partner*,
  2017 WL 417093 (M.D. Fla. Jan. 31, 2017) ...................................................2

*Shapiro v. TG Therapeutics*,
  2023 WL 405020 (S.D.N.Y. Jan. 25, 2023)....................................................9

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B) ...................................................................................1

**Other Authorities**

21 C.F.R. § 803.16..................................................................................................4

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| ¶ | Paragraph of the AC |
| 10-Q | Quarterly Report, filed with the SEC on Form 10-Q, pursuant to Section 13 or 15(d) of the Exchange Act |
| 510(k) | Section 510(k) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 510(k) |
| AC | Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws, filed December 13, 2022 (ECF 42) |
| Annex A | Annex A to the Motion (ECF 45-26) |
| Apyx | Apyx Medical Corporation |
| CFO | Chief Financial Officer |
| COO | Chief Operating Officer |
| CP | Putative Class Period, May 12, 2021 through March 11, 2022, inclusive, as defined in ¶ 1 |
| CW | Confidential Witness |
| Defendants | Apyx, Mr. Goodwin, and Ms. Semb |
| EBIDTA | Financial metric of earnings before interest, taxes, depreciation, and amortization added |
| Ex. | Exhibit to the Motion (ECF 45-1 through 45-25) |
| Exchange Act | Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* |
| FDA | US Food and Drug Administration |
| FLS | Forward-looking statement |
| FTC | US Federal Trade Commission |
| Individual Defendants | Mr. Goodwin and Ms. Semb |

iv

| March 14 MDSC | MDSC issued on March 14, 2022 |
|---|---|
| MDR | Medical Device Report |
| MDSC | Medical Device Safety Communication |
| Mot. or Motion | Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint and Memorandum of Law, filed February 13, 2023 (ECF 45) |
| Mr. Goodwin | Defendant Charles D. Goodwin |
| Ms. Semb | Defendant Tara Semb |
| Opp. or Opposition | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Class Action Complaint, filed April 14, 2023 (ECF 50) |
| Plaintiff | William E. Hattaway |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* |
| SEC | US Securities and Exchange Commission |
| Section 10(b) | Section 10(b) of the Exchange Act |
| Section 20(a) | Section 20(a) of the Exchange Act |

v

The Opposition confirms that the AC pleads no fraud, let alone with the particularity required by the PSLRA. Plaintiff proffers no "particularized facts" showing that the challenged statements—about Apyx's 2021 revenue/sales, and a risk factor warning of the regulatory oversight Apyx faced—were false when made or giving rise to a "strong inference" of scienter. To the contrary, the Opposition nowhere disputes, and thus concedes, Apyx (i) accurately reported its 2021 revenue/sales, (ii) diligently filed publicly-available MDRs, and (iii) disclosed the risks of regulatory noncompliance and adverse regulatory action (which never came).

Despite continued focus on Renuvion's off-label use, the Opposition nowhere disputes that such use was and is legal. The Opposition also confirms that the sole allegation of unlawful *promotion* of such use—CW1's vague, double-hearsay—fails to comply with the PSLRA as it is devoid of *any* detail, including regarding participants, timing, scope, or that any Individual Defendant was informed of it. While the Opposition points to post-CP "admissions"—not alleged in the AC—of Defendants' alleged knowledge of MDRs and lack of physician training, those too fail to demonstrate that any statement was false, let alone knowingly or recklessly so.

Lastly, the AC fails to plead loss causation, as the Opposition identifies no "new" information in the March 14 MDSC that "revealed" prior fraud, as required.

## ARGUMENT—THE AC FAILS TO PLEAD AN EXCHANGE ACT CLAIM

### A.   The AC's Puzzle Pleading Approach Fails to Comply With the PSLRA

Plaintiff concedes that, under the PSLRA, he must specify each statement alleged to be misleading and the reason(s) why. Opp.6; 15 U.S.C. § 78u-4(b)(1)(B).

1

The Opposition repeats a subset of the statements block-quoted in the AC, Opp.7-10; ¶¶ 29-47, and repeats the paragraphs noting the FDA's post-CP request for changes to Apyx materials and CW statements about Renuvion's off-label use, Opp.11-14; *e.g.* ¶¶ 32-34. Yet the Opposition still fails to *match* these "adverse" facts with specific statements, wrongly leaving it to the Court to do so and discern the basis for falsity. Mot.15; *see Hallback v. Carrington Mortg. Servs.*, 2022 WL 685663, *8 (M.D. Fla. Mar. 8, 2022) (dismissing pleading that requires court to sift through allegations).[1]

**B.      The AC Fails to Allege an Actionable Misstatement or Omission**

      **1.      The AC Pleads No False Statement About Financial Performance**

The AC challenges statements describing Apyx's 2021 revenue/sales, Opp.7-10, but "[f]actual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b),"*FindWhat Inv. Grp. v. FindWhat.com,* 658 F.3d 1282, 1305 (11th Cir. 2011). Ignoring this, the Opposition instead insists that Apyx's financial results were "inflated" by off-label use of Renuvion, Opp.12, 19, but never explains how or why. Plaintiff nowhere disputes that such use was and is legal, Mot.5-6, 16, 17, 26, 28, and was disclosed, Ex.4 at 12-13; Ex.8 at 10-11, 12; Ex.11 at 11. More fundamentally, the Opposition does not dispute that Apyx earned the revenue and made the sales, *which were never restated or reversed*. Mot.16. Nor does the Opposition attempt to quantify any alleged "inflation." *Id.* The Opposition asserts

---

[1] In the cases cited by Plaintiff, Opp.14, challenged statements were expressly matched with the reasons they were allegedly false. *See Karinski v. Stamps.com*, 2020 WL 281716, *9 (C.D. Cal. Jan. 17, 2020); *SEC v. Kingdom Legacy Gen. Partner*, 2017 WL 417093, *4 (M.D. Fla. Jan. 31, 2017).

that Apyx's 2021 accurate financial reporting was somehow misleading, *see* Opp.19, but its own authority holds otherwise, *In re Flowers Foods Sec. Litig.*, 2018 WL 1558558, *8 (M.D. Ga. Mar. 23, 2018) ("statements reporting financial results which [p]laintiff admitted were 'literally true' but misleading, cannot create liability").[2]

### 2.     The Challenged Regulatory Oversight Risk Factor Was Not False

The AC separately challenges one risk factor—warning of extensive regulatory oversight and detailing that non-compliance could lead to adverse regulatory action and harm Apyx's business, ¶¶ 30, 36, 42; Ex.1 at 7-8—claiming this risk "had already materialized." Opp.11. The AC alleges that such "materialization" came through the March 14 MDSC and April 1, 2022 FDA request for certain changes to Apyx materials. ¶ 32. But Apyx was notified about an MDSC only on March 11, ¶ 53, and the FDA requested changes to Apyx materials only on April 1, ¶ 54—*months after* the risk factor was last referenced in Apyx's November 2021 10-Q, Ex.10 at 26; ¶ 42.

The Opposition thus pivots to argue that the risk of adverse regulatory action had "already materialized" before CP-end because Apyx later "admitted" that it had submitted MDRs throughout the CP. Opp.12n.2, 15, 21, 23. Putting aside that the AC nowhere alleges such an admission, *see* ¶ 32,[3] the Opposition nowhere disputes

---

[2] The Opposition insists that the absence of a restatement is not fatal, and that Plaintiff was "not required to conduct a [financial] audit," Opp.18-19, but the cited cases all pointed to economic trauma that demonstrated the falsity of prior financial reporting. *See In re First Merchants Acceptance Corp. Sec. Litig.*, 1998 WL 781118, *2 (N.D. Ill. Nov. 4, 1998) (company filed for bankruptcy, admitted net worth was overstated); *Aldridge v. A.T. Cross*, 284 F.3d 72, 75 (1st Cir. 2002) (product line discontinuance and losses that offset prior sales); *In re HD Supply Holdings Sec. Litig.*, 341 F. Supp. 3d 1342, 1349 (N.D. Ga. 2018) (13% EBITDA drop and further expected losses).

[3] Plaintiff cannot amend via Opposition. *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011).

3

that Apyx filed MDRs—which were publicly available—whenever required, Mot.4-5, 17, and identifies no fact suggesting that Apyx's accurate MDR filings would lead to adverse regulatory action. In fact, Apyx filed MDRs (as required) whenever a report from a medical provider or patient "reasonably suggest[ed]" an Apyx device "may" have caused or contributed to injury, often before investigation and even if the event was caused by user error or another device. Ex.15; Ex.18 at 6; Ex.20 at 5; *see also* 21 C.F.R. § 803.16 (MDR filing not admission of causation).[4]

Moreover, the only regulatory actions that followed the MDRs were (i) the MDSC, which made no charge and took no action against Apyx, kept Renuvion on the market, and was amended to add more clearances, Exs.16, 22, 24; and (ii) a request that Apyx revise materials to avoid any possible "impl[ication of]" intended use outside cleared indications, Ex.20 at 5. The AC thus fails to identify any regulatory non-compliance by Apyx, let alone any adverse regulatory action from it.[5]

### 3. There Was No Omission That Rendered Any Statement False

*"Off-Label" Use*. The Opposition nowhere disputes that Apyx repeatedly

---

[4] While MDRs involving Renuvion increased from 15 in 2020 to 32 in 2021, the number of procedures using Renuvion for subdermal coagulation (its approved use) more than doubled; as for the 32 in 2021, investigation showed that these events were not attributable to an Apyx device or were within the scope of risks on product labeling. Ex.15; Ex.18 at 6; Ex.20 at 5. None of this suggests a risk of adverse regulatory action that had "already materialized."

[5] The Opposition also claims post-CP "admissions" that physicians were using Apyx products "without proper training." Opp.12 & n.2, 21, 24. Again, even ignoring that the AC nowhere pleads such "admissions," *see* ¶ 32, this has nothing to do with regulatory non-compliance by Apyx. Mr. Goodwin described that 14 of 32 MDRs in 2021 resulted from physicians using Renuvion for its cleared use, but before training by Apyx staff. Ex.18 at 6; Ex.20 at 5. As for off-label use, Apyx made clear that it did not train physicians for such use, ¶ 51; Ex.15, as that could be illegal promotion.

disclosed Renuvion's off-label use by physicians. *Supra* 2.[6] As this Court explained in *Bhatt v. Tech Data*, 2018 WL 6504375, *5 (M.D. Fla. Dec. 11, 2018)—on which the Opposition is silent—an omission claim cannot be premised on information that was disclosed. Instead, the Opposition conflates physicians' lawful off-label use with alleged illegal promotion of such use. Opp.15. This ignores that Apyx repeatedly noted that it did not promote off-label use, Ex.4 at 12-13; Ex.8 at 11, 12; Ex.11 at 11; Ex.15; Ex.18 at 6, and that the FDA never made such a finding. The AC's sole allegation regarding off-label promotion—CW1's vague, double hearsay statement, ¶ 33—fails to comply with the PSLRA. *See infra* 6-7.[7]

**Increase in MDRs.** Again, there was no omission, as the Opposition nowhere disputes that Apyx MDRs were public. Mot.4-5, 17. The Opposition cites no case holding that public MDR data must be repeated in financial reporting and fails to address the cases holding that no such duty of disclosure exists. Mot.17-18. Instead, the Opposition proffers that the supposed non-disclosure of MDRs was material because Apyx's stock dropped after the March 14 MDSC. Opp.15-16. But MDRs are material only if they imply "a significant risk to the commercial viability" of the product. *See* Mot.18n.12 (citing cases). The AC and Opposition make no such claim.

---

[6] Plaintiff's failure to respond to points in Defendants' Motion constitutes concession. *See Jones v. Bank of Am.*, 564 F. App'x 432, 434 (11th Cir. 2014).

[7] The Opposition wrongly insists that Defendants raise a truth-on-the-market defense that cannot be considered now. Opp.15. Physicians' off-label use of Renuvion was well-known because Apyx disclosed it, and thus there was no omission. *See Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials*, 2019 WL 1429667, *15, *21-23 (M.D. Fla. Mar. 29, 2019) (no actionable omission given disclosure, despite plaintiff's assertion that defendants claimed "truth on the market" defense).

***Risk of Regulatory Scrutiny and Potential Impact on Financials***. The Opposition concedes that Apyx fully disclosed the extensive regulatory scrutiny it faced, the range of potential adverse regulatory actions for any non-compliance, and the potential adverse impact on Apyx therefrom. Opp.15; *see* Ex.1 at 7-13; Exs.3, 7, 10. Nor does the Opposition dispute that Apyx's financial results were never adversely impacted, as 2021 revenue/sales grew and *beat* guidance. Mot.6, 8-9, 11, 18-19.

### 4.    The CW Purported Statements Fail to Plead Falsity

Conceding that both CWs left Apyx long before the CP started, Opp.16, the Opposition fails to address numerous cases holding that, as such, their statements should be afforded no weight, Mot.20 & n.15. While the Opposition claims that courts "have repeatedly rejected this assertion," Opp.16, the cited cases did not, *see HD Supply*, 341 F. Supp. 3d at 1352-58, 1360 (CWs were employed during CP); *see also Flowers Foods*, 2018 WL 1558558, *2, 15 (giving weight to former CFO's testimony that he warned senior management of risks of employee misclassification).

More fundamentally, the Opposition admits that the CWs merely repeat what Apyx disclosed: physicians lawfully used Renuvion off-label. Opp.16; ¶¶ 33-34. Nor does the Opposition dispute that the CWs provide no facts connecting such use with allegedly false revenue/sales, or any "materialized" risk of adverse regulatory action. Mot.20-21, 26-27. As for alleged off-label promotion, the Opposition repeats CW1's vague, double hearsay statement that unnamed Apyx personnel discussed other unnamed representatives who promoted off-label use at unidentified times. Opp.13; ¶ 33. The Opposition claims this double hearsay is not "automatically disqualify[ing],"

6

Opp.22, but fails to address the cases so holding, Mot.21 & n.16. The Ninth Circuit case cited, Opp.22, included statements from a company's COO who provided statements "specific in time, context and details, and involved important communications from a chief executive officer to his Board," *Lloyd v. CVB Fin.*, 2016 WL 384773, *6 (9th Cir. Feb. 1, 2016).[8]

### 5.   Many Challenged Statements Are Immaterial Puffery

Rather than addressing the caselaw holding that statements like many challenged in the AC are puffery, *see* Mot.22-23; Annex A, the Opposition simply repeats the rule that puffery must be considered in context, Opp.17. Plaintiff's reliance on *Keippel v. Health Insurance Innovations*, 2019 WL 5698329 (M.D. Fla. Nov. 4, 2019), is misguided. There, statements that compliance and customer service were "best-in-class" and "market-leading" were part of a widespread "bait-and-switch" scam—ultimately shut down through an FTC enforcement action—and were contradicted by internal documents and emails revealing the company had received "thousands and thousands" of customer complaints, with senior management admitting that complaints were "out of control." *Id.*, *2-4, 7-8; *see also* Mot.22n.17.[9]

---

[8] Citing *Luczak v. National Beverage*, 812 F. App'x 915, 924 (11th Cir. 2020), Opp.16-17, the Opposition conflates credibility with particularity. The salient point is that CW1's statement lacks a single detail about alleged off-label promotion, in contravention of the PSLRA. *See* 812 F. App'x 924-25 (finding CW allegations sufficiently particularized, including given CWs' "proximity to the offending conduct"; contrary to company's public disclosures, CWs stated that certain metrics were not used at company and were never discussed internally by management).

[9] The Opposition also fails to dispute that several challenged statements are FLS accompanied by sufficient cautionary language. Mot.23-24; Annex A. Rather, Plaintiff repeats the incorrect assertion that the fully disclosed risk of adverse regulatory action supposedly had already materialized, Opp.18. *See supra* 3-4; *Rayonier*, 2019 WL 1429667, *26 (risk factor not false where plaintiff failed to

7

**C.      The AC Pleads No Particularized Facts for a "Strong Inference" of Scienter**

*Motive.* The Opposition concedes that the AC pleads no motive, Opp.23, and ignores precedent holding that this weighs against inferring scienter, *see* Mot.25.

***Knowledge or Severe Recklessness.*** The Opposition also fails to identify particularized facts raising a "strong inference" that any Defendant knowingly or recklessly made a false statement about revenue/sales or regulatory oversight risk.

*First*, the Opposition concedes that CW statements must be "described with sufficient particularity" to plead scienter, Opp.21, but never confronts the complete absence of relevant detail from the CWs (other than their repetition of physicians' off-label use of Renuvion, which was fully disclosed, *supra* 2, 4-5, 6). The Opposition also concedes that the CWs did not work at Apyx during the CP and claim no relationship or communication with the Individual Defendants, Opp.16-17, 21-22; as such, they cannot speak to Defendants' scienter, let alone during the CP, Mot.26-27. Plaintiff simply ignores the cases finding these deficiencies fatal. Mot.26 & nn.21-22.

*Second*, the Opposition wisely abandons the AC's reliance on Mr. Goodwin's supposed post-CP "admission" that the FDA requested certain changes to Apyx materials in April 2022, Opp.23-24, as that came months after the last challenged statement. As for the new post-CP "admissions" regarding knowledge of increased MDRs and lack of physician training, Opp.12n.2, 15, 21, 23-24, neither demonstrates that the challenged statements were false, much less knowingly or

---

plead "particularized facts" showing "Defendants were aware of any *realized* risks"). These FLS are also protected because the AC fails to allege "actual knowledge" of falsity. Mot.24-28; *infra* 8-9.

recklessly so. *Supra* 3-4 & n.5; *see Shapiro v. TG Therapeutics*, 2023 WL 405020, *6 (S.D.N.Y. Jan. 25, 2023) (knowledge of adverse event reports, which are merely "raw data," not scienter for statements touting product safety); *Rice v. Intercept Pharms.*, 2022 WL 837114, *22 (S.D.N.Y. Mar. 21, 2022) (where no duty to disclose public adverse event reports, no scienter). Indeed, Apyx's filing of public MDRs undermines any such inference. *See Borochoff v. GlaxoSmithKline*, 2008 WL 2073421, *8 (S.D.N.Y. May 9, 2008) (disclosure of negative data on company website and to FDA inconsistent with intent to defraud), *aff'd*, 343 F. App'x 671 (2d Cir. 2009).

*Third*, the Opposition falls back on a "core operations" argument, Opp.22, nowhere alleged in the AC. Putting aside that the Eleventh Circuit has never adopted this doctrine, *see Plymouth County Ret. Sys. v. Carter's*, 2011 WL 13124501, *17 (N.D. Ga. Mar. 17, 2011), it does not, alone, plead scienter. Rather, a plaintiff must still allege facts showing that defendants made false statements with scienter. *See In re Carnival Corp. Sec. Litig.*, 2021 WL 2583113, *17 (S.D. Fla. May 28, 2021); *In re KLX Sec. Litig.*, 232 F. Supp. 3d 1269, 1282 (S.D. Fla. 2017). The AC fails to do so.[10]

*Finally*, the Opposition fails to weigh the non-fraudulent inferences here, Mot.28, instead repeating that "a tie goes to the plaintiffs when there are multiple plausible theories," Opp.20. But the Opposition identifies no plausible theory of fraud, while it is undisputed that Apyx accurately reported its 2021 financial performance; transparently filed MDRs and disclosed physicians' off-label use; and

---

[10] The Opposition concedes that officer status, alone, does not plead scienter, Opp.24, and fails to specify any contradictory information to which the Individual Defendants had access, Mot.27-28.

disclosed the significant regulatory oversight to which it was subject and risk of adverse regulatory action for any non-compliance (although there was none). Mot.28. Further, it is implausible that Apyx would devote resources to conduct trials and pursue 510(k) submissions for off-label use, Mot.4, 7-12, that it believed would not be cleared. *See Cozzarelli v. Inspire Pharms.*, 549 F.3d 618, 627 (4th Cir. 2008).[11]

**D.    The AC Fails to Plead Loss Causation**

Contrary to Plaintiff's assertion, Opp.24-25 & n.5, merely identifying a stock drop following an announcement does not plead loss causation, *see* Mot.29-30. The Opposition fails to identify any "new" information in the March 14 MDSC, which reiterated Renuvion's cleared uses, referenced Apyx's public MDRs, and repeated already-disclosed risks. Mot.29 & n.25. The Opposition also admits that a corrective disclosure must separately "reveal[]" the falsity of the prior misstatements, Opp.25n.5, but identifies no such revelation in the MDSC, which took no action against Apyx, included no charge of improper conduct by Apyx, and kept Renuvion on the market, Mot.29-30.

**E.    The AC Fails to Plead a Section 20(a) Claim**

Absent a Section 10(b) violation, there is no Section 20(a) liability. *See* Opp.25.

**CONCLUSION**

The AC should be dismissed. Dismissal should be with prejudice, as Plaintiff neither attached nor detailed any proposed amendment. *See Rosenberg v. Gould*, 554

---

[11] *Accord Nguyen v. Endologix*, 962 F.3d 405, 415 (9th Cir. 2020); *City of Edinburgh Council v. Pfizer*, 754 F.3d 159, 170 (3d Cir. 2014); *Gillis v. QRX Pharma*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016).

10

F.3d 962, 967 (11th Cir. 2009); *Bhatt*, 2018 WL 6504375, *6.

Dated:  May 15, 2023                              Respectfully submitted,

|                                                      | /s/ Meredith Kotler                                  |
| Jason P. Mehta (Fla. Bar No. 106110) | Meredith Kotler (*admitted pro hac vice*) |

Jason P. Mehta (Fla. Bar No. 106110)    Meredith Kotler (*admitted pro hac vice*)
**FOLEY & LARDNER LLP**                        Marques Tracy (*admitted pro hac vice*)
100 North Tampa Street, Suite 2700       **FRESHFIELDS BRUCKHAUS DERINGER**
Tampa, FL 33602                                    601 Lexington Avenue, 31st Floor
P: (813) 229-2300 | F: (813) 221-4210   New York, NY 10022
Email: jmehta@foley.com                         P: (212) 277-4000 | F: (212) 277-4001
                                                         Email: meredith.kotler@freshfields.com
                                                         Email: marques.tracy@freshfields.com

*Attorneys for Defendants Apyx Medical Corporation, Charles D. Goodwin, and Tara Semb*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 15, 2023, the foregoing was filed with the Court via CM/ECF, which will serve a true and correct copy via email service on all counsel of record.

                                                         /s/ Meredith Kotler
                                                         Meredith Kotler
                                                         *Attorney*

11